IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugh A. Hynes, : 
                Petitioner : 
                 :   No. 1354 C.D. 2019
                 : 
             v. : 
                 :   Submitted: September 17, 2020
Department of Health, Bureau of : 
Emergency Medical Services, : 
                Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE J. ANDREW CROMPTON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED: June 2, 2021

Hugh A. Hynes (Hynes) petitions for review of the final agency determination and order of the Pennsylvania Department of Health, Bureau of Emergency Medical Services (Department), dated August 29, 2019, which affirmed the decision of a hearing officer to revoke Hynes' Emergency Medical Technician (EMT) certification.

Hynes was certified as an EMT in the Commonwealth in January of 2018. On October 22, 2018, an order to show cause (OTSC) was issued against Hynes, directing him to show cause as to why the Department should not revoke his EMT certification. (Certified Record (C.R.) at 3.) The first page of the OTSC reflected, in large, all-capitalized letters, a notice to defend, which stated in part that

> [t]he accompanying [OTSC] has been issued against you,
> directing you to answer fully the averments contained in that

order pursuant to which [the Department] is pursuing the imposition of disciplinary or corrective sanctions against your certification as an [Emergency Medical Services (EMS)] provider.[1] The [OTSC] institutes a formal administrative action in which sanctions set forth in [the Emergency Medical Services System Act (EMS Act), 35 Pa.C.S. §§8101-8157,] may be imposed against you if the allegations in the [OTSC] are proven.

(C.R. at 1) (emphasis omitted). The notice also warned of a "formal hearing" to be held in accordance with the provisions of the Administrative Agency Law, 2 Pa.C.S. §§501-508, and the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code §§31.1 – 35.251, and advised Hynes that he had the opportunity to be heard and represented by counsel. (C.R. at 2.)

The OTSC alleged as follows: The EMS Act applied to Hynes due to the fact that he was a certified EMT in the Commonwealth. *Id.* On or around November 1, 1994, Hynes became a certified EMT in the State of Maryland. *Id.* Thereafter, on August 22, 2017, Hynes applied with the Department to be certified as an EMT in the Commonwealth (EMT Application). (C.R. at 4.) On his EMT Application, Hynes indicated that he was never convicted of a crime other than a "summary or similar offense." *Id.* On January 1, 2018, the Department issued Hynes an EMT certification. *Id.* Subsequently, Hynes' employer, the Adams Regional Emergency Medical Service, conducted a review of Hynes' background, which included a criminal history check. *Id.* The criminal history check revealed a report from the Pennsylvania Department of Human Services, which indicated that Hynes had a criminal conviction constituting "grounds for denying employment in a childcare position according to the Child

---

[1] Section 8103 of the EMS Act defines an EMS provider to include an EMT. 35 Pa.C.S. §8103.

2

Protective Services Law.[2]" *Id*. (citing OTSC Exhibit 3). The criminal history check also revealed a report by the Federal Bureau of Investigation (FBI), which indicated that on March 16, 1995, Hynes pled guilty in the State of New York to two misdemeanor counts of sexual misconduct under section 130.20 of the New York Penal Law.[3] *Id*. On September 11, 2018, Hynes applied for a paramedic certification with the Department and disclosed the misdemeanor convictions. (C.R. at 5, Exhibit 5.)

The OTSC charged Hynes with two counts. Count I alleged under section 8121(a)(2) of the EMS Act, 35 Pa.C.S. §8121(a)(2), the Department had the power to discipline an EMS provider for the deceptive or fraudulent procurement of a certification issued by the Department. (C.R. at 5.) The Department alleged that, on August 22, 2017, Hynes submitted an application for EMT certification representing that he had never been convicted of a crime other than a summary or similar offense.

---

[2] 23 Pa.C.S. §§6301-6387.

[3] This section provides, in full:

> A person is guilty of sexual misconduct when:
>
> 1. He or she engages in sexual intercourse with another person without such person's consent; or
> 2. He or she engages in oral sexual conduct or anal sexual conduct with another person without such person's consent; or
> 3. He or she engages in sexual conduct with an animal or a dead human body.
>
> Sexual misconduct is a class A misdemeanor.

N.Y. Penal Law §130.20 (McKinney). As indicated below, it appears that these convictions involved a minor victim. In a letter to the Maryland Institute for Emergency Medical Services Systems (MIEMSS), Hynes explained that he was "involved in a sexual relationship with 2 separate females under the age of 18 [when he was] 25 or 26 year[s] old." (C.R. at 51.) At a subsequent hearing, Hynes indicated that "all [of his] relationships since then have been age-appropriate." (C.R. at 77, Notes of Testimony (N.T.) at 21.)

*Id.* However, the Department pointed out this was not true because the criminal history check revealed that Hynes was convicted of sexual misconduct in New York. *Id.* Thus, the Department concluded Hynes "engaged in deception and fraud" in obtaining his EMT certification. *Id.* Count II alleged that Hynes' convictions for sexual misconduct constituted a crime involving moral turpitude, as defined by section 8121(a)(14) of the EMS Act, and therefore, he could be subject to discipline for being convicted of such an offense. 35 Pa.C.S. §8121(a)(14). The Department stated that, if Hynes could not show cause as to why the Department should not revoke his certification, the Department would proceed to revoke his certification. (C.R. at 6.)

Exhibit 1 to the OTSC included the August 22, 2017 EMT Application Hynes filed with the Department, which reflected that he applied for certification as an EMT. (C.R. at 9.) The EMT Application stated that

> [b]ackground checks may be performed to verify the information you provide on this form. If you make a false statement, or fail to identify all relevant conditions, your application may be denied or disciplinary action may be initiated against you by the Department . . . . That action may impact any certification or recognition you have received or may receive from the Department.

(C.R. at 10.) Following this warning, Hynes checked the "No" box in response to the question "**Have you ever been convicted of a crime other than a summary or similar offense?**" *Id.* (emphasis in original). Hynes signed the EMT Application certifying that "the information provided in this application is **true and complete** to the best of [his] knowledge, information[,] and belief." (C.R. at 15) (emphasis in original).

Hynes responded to the OTSC via letter dated October 31, 2018. (C.R. at 49.) In his letter, Hynes stated he did not intend to deceive the Department. *Id.* Hynes

4

explained he did not report the convictions because many years had passed since he was convicted, he had not needed to discuss his convictions, his convictions had not been brought up in regard to his criminal history, his convictions were a low point in his life, he had moved on from his convictions, and he had since been married. *Id*. Hynes also discussed his license in Maryland. Hynes explained that, when applying to be an EMT in Maryland in 1994, he had not yet been convicted of sexual misconduct in New York.[4] *Id*. Hynes' letter appeared to indicate that, due to the Department's recent discovery of his convictions, authorities in Maryland were contacted and began to investigate his criminal history. (C.R. at 49.) Attached to Hynes' letter to the Department was another letter that he wrote to the Maryland Institute for Emergency Medical Services Systems (MIEMSS). (C.R. at 51.) In the letter to MIEMSS, Hynes explained that he did not report his convictions to relevant authorities in Maryland because he thought he only had to report felonies. *Id*. Hynes also provided reasons similar to those he provided to the Department as to why he failed to report his convictions. *Id*. By letter dated September 13, 2018, MIEMSS dismissed its investigation into Hynes' criminal background. (C.R. at 53.)

By letter dated December 19, 2018, Hynes was informed a hearing would be held on February 25, 2019, at 9:00 a.m. (C.R. at 56.) The hearing convened on that date, and Hynes represented himself *pro se*. (C.R. at 57.) At the beginning of the hearing, the hearing examiner (Examiner) asked Hynes whether he was aware that the law permitted him to be represented by an attorney, to which Hynes responded yes. (C.R. at 59, Notes of Testimony (N.T.) at 3.) The Examiner asked Hynes if it was his decision to proceed *pro se*, and Hynes responded yes. *Id*.

---

[4] Hynes' September 29, 1994 Maryland EMT application reflects that he checked the "No" box under the question of whether he had ever been "convicted in court for other than a misdemeanor or a minor traffic violation." (C.R. at 19, Exhibit 2.)

5

The Department called Paul Hoffman, an EMS program specialist employed by the Department, (C.R. at 61, N.T. at 5), and Dylan Ferguson, the Director of the Bureau of Emergency Medical Services, to testify. (C.R. at 73, N.T. at 17.) The Department's witnesses explained how EMT applications are reviewed internally and how the Department discovered the information which led to the filing of the OTSC against Hynes.

Hynes also testified. Hynes testified that he was not in a good place in life when he committed the actions leading to his convictions. (C.R. at 76, N.T. at 20.) Hynes maintained that his convictions had not been brought up despite working as an EMT in Maryland for 20 years, and he noted that he had his fingerprints run and his background checked numerous times. *Id.* Hynes explained that he would rather forget his convictions and noted that he has moved on and has not been in trouble with law enforcement since his original convictions. (C.R. at 21, N.T. at 77.) He explained that, following his convictions, he had only been in age-appropriate relationships and had come into contact with minors without any problems. *Id.* Hynes maintained that his convictions just "slipped [his] mind" because they had not come up in 20 years. *Id.* Hynes also testified that he accepted responsibility for his actions, but maintained it was an honest mistake. (C.R. at 78, N.T. at 22.) He explained that he never had an incident when treating minors as an EMT. *Id.* On cross examination, Hynes admitted that he stated on his EMT Application that he was never convicted of a crime other than a summary offense, and his statement was not true. (C.R. at 79, N.T. at 23.) With respect to his failure to disclose his convictions, Hynes explained that he was not trying to "pull the wool over the [Department's] eyes just to get a certification." (C.R. at 78, N.T. at 22.)

The Examiner issued her proposed report on April 11, 2019, which recommended Hynes' EMT certification be revoked. The Examiner made the following findings of fact: On March 16, 1995, Hynes was convicted by entering a guilty plea to two counts of sexual misconduct in New York state. (Findings of Fact (F.F.) No. 1.) On August 22, 2017, Hynes applied for an EMT certification with the Department. (F.F. No. 2.) Hynes responded "No" to the question on the EMT Application as to whether he had ever been convicted of a crime other than a summary or similar offense. (F.F. Nos. 3-4.) Hynes signed his name on the EMT Application, certifying the information provided therein was true and complete, to the best of his knowledge, information, and belief. (F.F. No. 5.) The Department issued Hynes an EMT certification on January 1, 2018. (F.F. No 6.) EMS agencies perform periodic background checks on their employees, including ChildLine and Abuse Registry Reports and FBI background checks; accordingly, Hynes' employer supplied the Department with an FBI background report dated July 23, 2018, which indicated that Hynes had been convicted of two misdemeanor counts of sexual misconduct in New York. (F.F. Nos. 7-8.) Similarly, on July 31, 2018, Hynes' employer supplied the Department with a ChildLine report which indicated Hynes' convictions could disqualify him from employment in a childcare setting. (F.F. No. 9.) On October 15, 2018, Hynes submitted a separate application for a paramedic certification with the Department, disclosing his conviction. (F.F. No. 10.) On October 22, 2018, the Department filed the OTSC against Hynes seeking to revoke his certification because he was not truthful in reporting his criminal conviction, and, further, was convicted of a crime of moral turpitude. (F.F. No. 12.)

The Examiner also made conclusions of law. The Examiner concluded that, because Hynes was convicted of sexual misconduct, and sexual misconduct is a

7

crime of moral turpitude, the Department was authorized to suspend, revoke, or impose other disciplinary sanctions against Hynes' EMT certification pursuant to the EMS Act. (Conclusion of Law (C.L.) No. 3.) The Examiner also concluded that, because Hynes lied to the Department about his convictions on his EMT Application, Hynes procured his EMT certification by deception or fraud, and therefore, the Department also had the ability to discipline Hynes. (C.L. No. 4.) The Examiner concluded portions of Hynes' testimony were not credible. The Examiner explained that it was "simply not credible that any individual could have a criminal conviction for the morally reprehensible offense of sexual misconduct and that it would 'accidentally slip his mind' in the face of a specific question asking about criminal history." (C.R. at 122, Reproduced Record (R.R.) at 12a.) The Examiner reasoned that it was unlikely Hynes forgot about the convictions based on his testimony that he was aware that the convictions had not come up on other background checks. *Id.* The Examiner identified and considered three pieces of mitigating evidence. The first was the passage of time between his convictions and the present; the second was that Hynes accepted responsibility for his actions; and the third was that Hynes has not been in trouble with law enforcement since his conviction. (C.R. at 124-25, R.R. at 14a-15a.) However, the Examiner explained that Hynes presented little evidence to support the mitigating factors and to show how his character had changed since his conviction. *Id.* The Examiner concluded based on the evidence as a whole, including that related to mitigation, revocation was the appropriate sanction. (C.R. at 126-27, R.R. at 16a-17a.) Accordingly, the Examiner entered an order revoking Hynes' certification.

Hynes obtained counsel and filed exceptions to the proposed order. (C.R. at 132-39, R.R. at 19a-26a.) Generally, Hynes argued the Examiner did not give proper weight and consideration to the mitigating factors, his convictions were remote in time,

8

he accepted responsibility for his actions, and Hynes had not been in trouble with law enforcement since he was originally convicted. Accordingly, Hynes maintained a less severe sanction was appropriate under the circumstances. In support, Hynes attached numerous documents to his brief which were not presented at the hearing.[5]

By order mailed August 29, 2019, the Deputy Secretary of the Department (Secretary) affirmed the decision of the Examiner. (C.R. at 178, R.R. at 56a.) The Secretary framed the main issue before her as whether the Examiner failed to give proper weight and consideration to the factors that may mitigate the Examiner's recommendation to revoke Hynes' EMT certification. (C.R. at 167, R.R. at 44a.) Before reaching the major contention, the Secretary addressed Hynes' assertion that he was unaware that the hearing before the Examiner would be formal. (C.R. at 167-68, R.R. at 44a-45a.) Relatedly, the Secretary considered the contention that Hynes relied on evidence outside of the hearing record. (C.R. at 168, R.R. at 45a.) The Secretary concluded the notice to defend on the first page of the OTSC satisfactorily notified Hynes of the adversarial and formal nature of the hearing. *Id.* Second, the Secretary noted that Hynes acted as his own attorney from the start, by filing a timely answer to the OTSC. *Id.* Third, the Secretary noted the Examiner questioned Hynes as to whether he wished to proceed without a lawyer even though he was permitted to have one. (C.R. at 168-69, R.R. at 45a-46a.) With regard to the evidence outside of the record, the Secretary concluded that under section 35.231 of GRAPP, 1 Pa. Code §35.231, additional evidence would not be considered unless a petition to reopen the record for

---

[5] Attached to Hynes' exceptions was another letter from himself explaining his position and providing background information, an email from the victim implicated in his conviction, an email from a woman with whom he was previously in a relationship while she was a minor, a letter in support of his character from a person with whom he previously worked as a firefighter, two letters in support of his character from a person with whom he worked as an EMT, and an award earned in EMT services. (C.R. at 140-52, R.R. at 27a-39a.) Hynes does not contend on appeal that these documents are contained within the record.

9

the purpose of taking additional evidence was filed and granted. (C.R. at 169-70, R.R. at 46a-47a.) The Secretary noted that Hynes failed to file such a petition, and the documents were, therefore, outside of the record and could not be taken into account on appeal. (C.R. at 170, R.R. at 47a.)

The Secretary then addressed Hynes' contention that the Examiner failed to give proper weight and consideration to the mitigating factors in the record.[6] (C.R. at 171, R.R. at 48a.) With regard to remoteness of Hynes' convictions in time, the Secretary stated even though the convictions occurred nearly 25 years ago, remoteness in time is not a *per se* rule for excluding consideration of this factor. (C.R. at 173, R.R. at 50a.) Regardless, the Secretary explained that Hynes provided little information to support this factor. (C.R. at 173-74, R.R. at 50a-51a (quoting N.T. at 20)).

The Secretary addressed the second mitigating factor identified by Hynes —that he had accepted responsibility for his actions. Similarly, the Secretary concluded that, even though Hynes accepted responsibility for his actions, he provided little evidence to explain the facts underlying his conviction. (C.R. at 174, R.R. at 51a.) In the same vein, the Secretary concluded that although Hynes had subsequently come into contact with minors without any incident, this mitigating evidence was outweighed by the fact that the underlying crime involved sexual misconduct with a minor. *Id.*

The Secretary addressed the third mitigating factor—that Hynes had no other issues with law enforcement since the underlying conviction. (C.R. at 175, R.R. at 52a.) The Secretary recognized this as a mitigating factor but questioned how Hynes' character had otherwise changed since the conviction. The Secretary took issue with the fact that Hynes did not put forth evidence of "any treatment or therapy,

---

[6] The Secretary concluded that there was evidence to support both counts alleged in the OTSC, and therefore, the Department was authorized to take disciplinary action against Hynes including the revocation of his certification. (C.R. at 171-72, R.R. at 48a-49a.)

10

employment history, educational endeavors, or any community and religious activities." (C.R. at 175, R.R. at 52a.)

Finally, the Secretary concluded that Hynes lied on his EMT Application, and intended to deceive or defraud the Department, and therefore, his character had not changed since his convictions in 1995. (C.R. at 176-78, R.R. at 53a-55a.) Accordingly, the Secretary determined that revocation of Hynes' certification was appropriate because the Department would have denied Hynes' EMT Application had Hynes reported the convictions in the first place. (C.R. at 178, R.R. at 55a.) Hynes subsequently appealed to this Court.

## Discussion

In his petition for review,[7] Hynes raises the single issue of whether the Department abused its discretion and/or committed an error of law in affirming the revocation of his EMT certification. However, Hynes' arguments on appeal are properly viewed as two issues: (1) whether the Secretary erred in her assessment of Hynes' mitigating evidence, and (2) whether the Secretary's revocation of his license was unreasonable.

With regard to the first issue, Hynes maintains the Secretary "overlooked and undervalued" the mitigating factors presented. *Id.* Hynes reiterates that he had no issues with law enforcement since his original convictions and showed himself to be

---

[7] Our standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704, *Firman v. Department of State, State Board of Medicine*, 697 A.2d 291 (Pa. Cmwlth. 1997), *petition for allowance of appeal denied*, 706 A.2d 1215 (Pa. 1998). This Court's review of a licensing board's disciplinary sanction determines "whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Goldberger v. State Board of Accountancy*, 833 A.2d 815, 817 n.1 (Pa. Cmwlth. 2003) (quoting *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 365 (Pa. 1991)).

11

trustworthy, dependable, and responsible. Hynes maintains the Secretary improperly dismissed the passage of time as a mitigating factor and was incorrectly critical of the lack of details submitted by Hynes with regard to his conviction. In support, Hynes points to the documents attached to his exceptions and appears to fault the Secretary for failing to take them into account.

Hynes maintains his prior convictions cannot provide a basis for his license revocation where the prior convictions do not in any way reflect upon his present ability to properly discharge the responsibilities required by the position. Accordingly, Hynes argues his nearly 25-year-old convictions were not a valid basis upon which to revoke his license. Specifically, Hynes contends that, under *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, "past convictions cannot provide a basis for license revocation when the prior convictions do not in any way reflect upon that person's present ability to properly discharge the responsibilities required by the position." 578 A.2d 1355, 1358 (Pa. Cmwlth. 1990) (citing *Secretary of Revenue v. John's Vending Corporation*, 309 A.2d 358 (Pa. 1973) (*John's Vending*)). Further, Hynes maintains that he has never been disciplined, reprimanded, or had his abilities as an EMT called into question. Hynes argues his revocation was completely unrelated to his performance in the field, and thus, "serves no legitimate purpose." (Hynes' Br. at 12.) Hynes also argues it was inappropriate for the Department to consider his convictions as aggravating factors. With respect to Hynes' false representation on his EMT Application, he argues that although he made a mistake by not disclosing his convictions, there is no proof of fraud or deceit.

In response, the Department argues because the decision below was not made in an arbitrary or capricious manner, this Court should affirm the revocation of Hynes' certification. The Department maintains the final decision adequately

12

contemplates the mitigating and aggravating factors and correctly determined the level of sanction. The Department maintains Hynes only offered generalized testimony with regard to his conviction, why he did not disclose it, and what he had been doing since he was convicted. (Department's Br. at 7.)

The Department maintains the Secretary did not err in considering the three mitigating factors. Specifically, the Department argues, based on the totality of the circumstances and Hynes' lack of evidence, the Secretary properly discounted the mitigating evidence. The Department also points out the Secretary did not find Hynes' statement that his convictions "slipped his mind" to be credible. The Department further argues that the Secretary did not abuse her discretion by revoking Hynes' EMS certification because it met its burden of proof and the penalty was not unreasonable. Additionally, the Department argues the evidence outside of the record should not be considered because it was not offered at the hearing and is therefore not part of the record. The Department maintains Hynes was aware of the formal and adversarial nature of the hearing, and that any shortfalls due to his *pro se* representation were the direct result of his informed decision to represent himself. We now turn to the merits of Hynes' appeal.

### (a) Whether the Evidence Attached to Hynes' Brief in Support of His Exceptions is Outside the Record

Hynes does not respond to the contention that the evidence attached to his brief in support of his exceptions is outside the record and continues to rely on these documents on appeal. Hynes attributes the failure to present this evidence at the hearing to his decision to represent himself *pro se*.[8] The OTSC explained that the

---

[8] To the extent Hynes attributes any error due to his *pro se* status, he is not entitled to relief. As we explained above, Hynes was given notice in the OTSC that disciplinary sanctions were being **(Footnote continued on next page…)**

hearing was to be held in accordance with GRAPP. Section 35.231 of GRAPP, provides, in pertinent part, that "[a]fter the conclusion of a hearing in a proceeding or adjournment thereof sine die, **a participant in the proceeding may file . . . a petition to reopen the proceeding for the purpose of taking additional evidence.**" 1 Pa. Code §35.231 (emphasis added). Furthermore, section 35.128 of GRAPP provides an agency head or presiding officer may call for further evidence at the hearing or at the adjournment thereof. 1 Pa. Code §35.128. The record does not reflect that the proceedings were ever reopened or additional evidence was requested. Yet, Hynes refers to the documents attached to his brief in support of his exceptions on appeal even though they were never entered into evidence in the proceedings below. It is well established that facts outside of the record may not be considered. *HYK Construction Company, Inc. v. Smithfield Township*, 8 A.3d 1009, 1016 (Pa. Cmwlth. 2010.) "It is of course fundamental that matters attached to or contained in briefs are not evidence and cannot be considered part of the record either before an administrative agency or on appeal." *Zinman v. Department of Insurance*, 400 A.2d 689, 691 (Pa. Cmwlth. 1979); *see also Thomas v. Grimm*, 155 A.3d 128, 134 (Pa. Cmwlth. 2017) (same). Accordingly, we agree with the Department that we cannot review and/or rely on these documents on appeal as they are outside of the record.

---

sought against him, and that the OTSC constituted a "formal administrative action." (C.R. at 1.) The notice also warned of a "formal hearing" to be held in accordance with the provisions of the Administrative Agency Law and GRAPP and advised he had the opportunity to be heard through counsel. (C.R. at 2.) Furthermore, the Examiner asked Hynes whether he was aware the law permitted him to be represented by an attorney and whether it was his decision to proceed *pro se*, to which Hynes responded yes. (C.R. at 59, N.T. at 3.) It is a basic principle that "a lay person who represents himself in legal matters must[,] to an extent assume the risk that his lack of expertise in legal training will prove his undoing." *Barber v. Tax Review Board*, 850 A.2d 866 (Pa. Cmwlth. 2006) (citing *Huffman v. Unemployment Compensation Board of Review*, 555 A.2d 287, 288 (Pa. Cmwlth. 1989)). Accordingly, to the extent Hynes blames error on his *pro se* status before the Examiner, he is not entitled to relief.

14

### (b) Whether the Secretary Erred in Her Assessment of the Mitigating Evidence Presented by Hynes.

The first mitigating factor at issue is that Hynes accepted responsibility for the seriousness of his actions. The second factor is that Hynes had no other problems with law enforcement since his conviction. The third factor is Hynes' contention that his 25-year-old convictions were too remote in time to be of any value in predicting a licensee's future conduct.

By way of background, we recognize that

> "[t]he right to practice a chosen profession is subject to the lawful exercise of the power of the State to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations." *Khan v. State [Board] of Auctioneer [Examiners]*, []842 A.2d 936, 946 ([Pa.] 2004). A licensing board "'exercises considerable discretion in policing its licensees.'" *Abruzzese v. Bureau of [Professional] & Occupational Affairs, State [Board] of Cosmetology*, 185 A.3d 446, 453 (Pa. Cmwlth. 2018) (citation omitted). Accordingly, our review of disciplinary decisions by a professional board is extremely deferential. *King v. Bureau of [Professional] & Occupational Affairs, State [Board] of Barber [Examiners]*, 195 A.3d 315 (Pa. Cmwlth. 2018).

*Bennett v. Bureau of Professional and Occupational Affairs, State Board of Chiropractic*, 214 A.3d 728, 734-35 (Pa. Cmwlth. 2019). However, "in reaching its decision, the Board must review the entire record and consider all evidence, including evidence of mitigating circumstances." *Bentley v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 179 A.3d 1196, 1201 (Pa. Cmwlth. 2018*).* "The weight to be given to evidence of mitigating circumstances is a matter of agency discretion." *Id*. at 1200 (citing *Burnworth v. State Board of Vehicle*

15

*Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991)). "A board may give greater weight to the seriousness of a licensee's criminal convictions than to mitigating evidence." *Bethea-Tumani v. Bureau of Professional and Occupational Affairs*, 993 A.2d 921, 932 (Pa. Cmwlth. 2010) (citing *Burnworth*, 589 A.2d at 297). Moreover, this Court "may not reweigh the evidence presented." *Id.*

### i. Accepting Responsibility as a Mitigating Factor

We first address whether the Secretary properly considered Hynes' acceptance of responsibility for his actions. The Secretary concluded Hynes failed to provide any perspective surrounding the events leading to his convictions and merely testified that "[a]ll [of his] relationships since [his convictions] have been age-appropriate. He [had] resided with an individual that had children, and that there had been no issues with the treating [of] minors or being alon[e] with minors in the back of the ambulance." (R.R. at 51a.) Further, the Secretary explained that Hynes failed to provide time frames for reference. The Secretary recognized the mitigating nature of this factor, but determined Hynes did not provide enough detailed information about the underlying convictions from which she could conclude that Hynes accepted responsibility for his actions. Moreover, the Secretary stated that this factor was outweighed by the nature of his underlying crime.

The weight the Secretary assigns to each factor is a matter of agency discretion, and we will not reweigh the evidence on appeal. *See Bentley*, 179 A.3d at 1201. "[W]hen imposing discipline, [the agency] must compare the mitigating evidence of record to [the] seriousness of [the] misconduct." *Id.* at 1202 (citing *Nguyen v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 53

A.3d 100, 109 (Pa. Cmwlth. 2012)).[9] The Secretary was entitled to give greater weight to the seriousness of Hynes' convictions than to mitigating evidence. *See Benthea-Tumani*, 993 A.2d at 932 (citing *Burnworth*, 589 A.2d at 297).

### ii. No Trouble With The Law Since Conviction As Mitigating Factor

With regard to Hynes' contention that the Secretary failed to consider that he had not been in trouble with law enforcement since his original conviction, the Secretary concluded this mitigating factor was established by the record. However, the Secretary determined there was a lack of evidence to support a determination that Hynes was rehabilitated or took measures to aid in his rehabilitation. The Secretary stated that "there was very little evidence to show that a change had taken place in Hynes' character between 1995 and the present," and Hynes failed to put forth testimony as to his life post-conviction. (R.R. at 52a.) As explained above, the weight assigned to each factor is a matter within the Secretary's discretion. Here, the Secretary discounted this factor due to the lack of evidence provided to support it and we will not reweigh the mitigating evidence on appeal. Thus, the Secretary did not err in considering this factor.

### iii. Passage of Time as Mitigating Factor

Finally, we consider whether the Secretary properly considered the passage of time between the convictions and the present. In regard to this factor, the Secretary stated that "the fact that the [conviction] occurred in 1995 or 24 years ago should not be considered a *per se* rule for excluding consideration of the matter when

---

[9] Hynes argues that the Secretary erred in considering the nature of his offenses as an aggravating factor. However, the Secretary merely compared the mitigating evidence to the seriousness of Hynes' conduct, which was appropriate for her to do.

17

addressing a license revocation." (R.R. at 50a.) The Secretary reasoned that the passage of time, in and of itself, is not a mitigating circumstance, and that the mitigating evidence must be compared to the seriousness of the misconduct. Specifically, the Secretary explained that

> [w]hat can be gathered from Hynes' testimony is that ". . . it was a crime that happened 30 years ago. It happened in upstate New York. It was in a small town. [It was] [j]ust a situation where it wasn't a good situation for [him] to be in at that point." ([C.R. at 76,] N.T. at 20.) He states that at this point in his life he was a "very immature 25, 26, or 27-year-old." ([C.R. at 77,] N.T. at 21.) Hynes further states that since he moved to Maryland and spent ". . . close to 20 years in Maryland . . ." ([C.R. at 76,] N.T. at 20), [he] has gotten married and ha[d] a son, without providing specificity or any other further insights as to what he has done during all those years. ([C.R. at 77,] N.T. at 21.)

(C.R. at 173-74, R.R. at 50a-51a.) The Secretary found the mitigating evidence presented provided little detail as to how Hynes had changed since his convictions. The Secretary stated that, "[a]lthough Hynes' [conviction] was remote, 1995, it should be considered given his failure to answer truthfully the question of his past criminal record in the Application submitted in 2017." (R.R. at 52a.) Furthermore, the Secretary explained this more recent lie, which also constituted an act of moral turpitude, gave rise to the implication that he has not changed since his conviction. *Id*. at 55a.

Our courts have repeatedly addressed whether a conviction that is remote in time can support the revocation of a professional license. Most notably, our Supreme Court addressed this issue in *John's Vending*, where a wholesale cigarette dealer's license was revoked due to the prior convictions of one of its shareholders. Raymond Mantorano, a 50% shareholder of the corporation, was convicted of selling untaxed liquor in 1951, possessing and transporting unstamped whiskey in 1952, and possessing

18

and selling derivatives of opium in 1954 and 1955. 309 A.2d at 359. Mr. Mantorano did not disclose these convictions on the relevant application. *Id*. The Bureau of Cigarette and Beverage Taxes filed a complaint charging Mr. Mantorano for violating the Cigarette Tax Act[10] by having a conviction involving moral turpitude, and for failing to disclose the same. *Id*. The Secretary of Revenue revoked the relevant license.[11] *Id*.

The Supreme Court pointed out that "every citizen has an inalienable right to engage in lawful employment [and] while a state may regulate a business which affects the public health, safety[,] and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such derivation is reasonably related to the state interest sought to be protected." *Id*. at 361. The Court held that "there is no material relevance between the past derelictions of [the] applicant and his present ability to perform duties required by the position." *Id*. Importantly, the Supreme Court explained that, due to the fact that the crimes occurred nearly 20 years prior to the action, they were rendered of "little value in predicting future conduct of the perpetrator," and it was "ludicrous to contend that these prior acts provide any basis to evaluate his present character." *Id*. at 362. The Court also explained that the "basis exists only where those events occurred so recently that the particular character trait of the individual involved can reasonably be assumed to have remained unchanged." *Id*. As a policy consideration, the Court explained:

---

[10] Act of July 22, 1970, P.L. 513, 72 P.S. §§3169.101-3169.1203, repealed by section 5 of the Act of December 21, 1981, P.L. 482, 72 P.S. § 8297.

[11] In *John's Vending*, there was also an allegation that the licensee made a false statement on his application. However, our Supreme Court pointed out that "[t]he Commonwealth Court held that there was insufficient evidence to sustain the allegation of a material false statement in the application; in view of appellees' acceptance of this finding we need not consider that issue in this appeal." 309 A.2d at 361. Here, there is no dispute that Hynes did not disclose his conviction.

> We are also mindful that such a result runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders. This State in recent years has been unalterably committed to rehabilitation of those persons who have been convicted of criminal offenses. To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult road of rehabilitation.

*Id.* at 362.[12]

We relied on these principles to reach a similar outcome in *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514 (Pa. Cmwlth. 2009). In *Ake*, the petitioner appealed from an order revoking his certificate to practice as a certified public accountant (CPA) and his license to practice public accounting in Pennsylvania due to a 2002 conviction for criminal harassment in the State of Illinois. *Id*. at 515. Specifically, in early 2007, Ake applied for reinstatement of his Pennsylvania credentials after letting them lapse due to his relocation to Illinois in 1998. *Id*. Subsequently, the State Board of Accountancy initiated an OTSC against him due to his 2002 conviction. *Id*. Ake completed all of the conditions of his sentence and probation. *Id*. at 517.

The board eventually issued a final adjudication revoking Ake's CPA credentials, reasoning, amongst other things, that the revocation would eliminate the risk of harm he may pose to others in his professional position as a CPA. *Id*. at 518-19. We reversed, relying on the principles annunciated in *John's Vending*. This Court

---

[12] *See also King*, 195 A.3d at 331 (McCullough, J., concurring) ("I support and recognize the state's commitment to rehabilitate persons convicted of crimes . . . .").

explained "*John's Vending* teaches that the nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of the conviction." *Id*. at 520. As applied to the facts of that case, we explained that seven years had elapsed between the offending conduct, which was a substantial interval of time. *Id*. We also noted that the incident was isolated, and Ake did not engage in similar conduct since his arrest. *Id*. This Court also explained that the conviction did not relate to any of the character qualities expected of a CPA. *Id*.

Here, similar to *John's Vending*, and *Ake*, there is no material relevance between Hynes' prior convictions and his present ability to perform his duties as an EMT. Importantly, the conduct in question occurred 25 years ago. Hynes testified he has since moved on, started a family of his own, and has been in contact with minors in his professional capacity without any issue. As the court concluded in *John's Vending*, Hynes' convictions for sexual misconduct present "little value in predicting future conduct of their perpetrator." *Id*. at 361. Here, Hynes' prior actions did not occur "so recently that [Hynes'] particular character trait" which led to his convictions can reasonably be assumed to have remained unchanged. *John's Vending*. Similar to *Ake*, it appears that this was an isolated incident, and does not relate to his present character to function as an EMT. Accordingly, we conclude that the Secretary erred with respect to her consideration of Hynes' convictions because her determination did not properly account for the remoteness in time of the convictions and is inconsistent with *John's Vending* and *Ake*. However, this does not end the inquiry. We must still address the fact that Hynes was charged with being untruthful on his EMT Application.

**(c)Whether the Secretary Erred in Revoking Hynes'
Certification Because He Did Not Disclose His Conviction.**

The remaining count of the OTSC sought to revoke Hynes' certification on the grounds that he procured his license through untrue representations in securing his certification. The Secretary explained that Hynes' failure to disclose his convictions on his EMT Application

> resulted in the Department being in a disadvantaged position when deciding to issue the EMT certification based on the information [in] the [EMT] Application. Hynes' action foreclosed the Department from taking action at the time of the review of the [EMT] Application which under [section 8121(a) of the EMS Act, 35 Pa.C.S. §8121(a),] would have been a denial of the application or certification.

(R.R. at 55a.) It is not disputed that Hynes failed to disclose his convictions on his EMT Application.

Section 8121(a)(2) of the EMS Act provides:

> The [D]epartment may discipline an EMS provider or applicant for EMS provider certification for any of the following reasons:
> * * *
> (2) Deceptive or fraudulent procurement or representation of certification or registration credentials or for making misleading, deceptive or **untrue representations** to secure or aid or abet another person to secure a certification, license, registration or any other authorization issued by the department under this chapter.

35 Pa.C.S. §8121(a)(2) (emphasis added). Section 8121(a)(2) of the EMS Act only requires that an untrue representation be made when seeking a certification in order to warrant discipline. The Secretary determined Hynes' answer to the question about his criminal history was untrue. As explained in detail above, Hynes relies on mitigating

22

evidence to suggest that the revocation of his certification was too severe.   Section 8121(b) of the EMS Act provides:

> If the [D]epartment is empowered to take disciplinary action against an individual under this section, the department **may** do one or more of the following:
>
> (1) Deny the application for certification.
>
>          * * *
>
> (3) Revoke, suspend, limit or otherwise restrict the certification.

35 Pa.C.S. §8121(b) (emphasis added).[13]  Hynes' failure to report his convictions on his EMT Application under section 8121(a)(2) of the EMS Act is not disputed. Therefore, the Department was authorized to take disciplinary action against Hynes.[14] Because the Department was authorized to take disciplinary action against him, it was also authorized under section 8121(b) to impose sanctions.

It is well settled that this Court's review is limited to "whether [a licensing Board's] decision was made in accordance with the law, not whether it was reasonable." *Slawek*, 586 A.2d at 365. The "Court is required to correct abuses of discretion in the manner or degree of the penalties imposed, [but] we will not, absent a manifestly unreasonable exercise of judgment, substitute our discretion for that of the

---

[13] The Department may also issue any number of sanctions including a public reprimand, revoking, suspending, limiting, or otherwise restricting a certification, requiring educational courses, imposing a civil penalty, or placing the individual on probation.  35 Pa.C.S. §8121(b).

[14] The same is true to the extent Hynes violated section 8121(a)(14) by "[c]onviction of a felony, a crime related to the practice of the EMS provider[,] or a crime involving moral turpitude. For the purposes of this paragraph, a conviction includes a judgment of guilt, a plea of guilty or a plea of nolo contendere." 35 Pa.C.S. §8121(a)(14).

[agency], an administrative body endowed with expertise in matters subject to its jurisdiction." *Burnworth*, 589 A.2d at 296; *see also Ake*, 974 A.2d 514 (same).

Given these particular circumstances, we find that the Secretary committed a manifestly unreasonable exercise of judgment in revoking Hynes' certification. As such, we are constrained to correct the degree of the penalty imposed. At bottom, these facts do not warrant a revocation. As explained, Hynes presented mitigating evidence in support of his position. He has not been in trouble with law enforcement since his original convictions, he accepted responsibility for the events leading to his convictions, and his convictions are so remote in time that they are worth little in evaluating his future conduct. Second, with respect to the fact that Hynes was untruthful on his application, we find the Secretary overstated the implication of his initial denial, because he subsequently disclosed his convictions on his paramedic application.

As our Supreme Court explained in *John's Vending*, "every citizen has an inalienable right to engage in lawful employment [and the state] may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected." 309 A.2d at 361. By imposing the highest possible penalty, the Department has effectively deprived Hynes of his ability to earn a livelihood. Given the significant mitigating evidence, any interest sought to be protected by the Department is not impacted to a degree commensurate with these infractions.

Accordingly, we reverse the Department's August 29, 2019 order.


_____
PATRICIA A. McCULLOUGH, Judge


24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugh A. Hynes,                           :
                    Petitioner           :
                                         :   No.  1354 C.D. 2019
          v.                             :
                                         :
Department of Health, Bureau of          :
Emergency Medical Services,              :
                    Respondent           :

## *ORDER*

AND NOW, this 2nd day of June, 2021, the Final Agency Determination and Order of the Pennsylvania Department of Health, Bureau of Emergency Medical Services, dated August 29, 2019 is REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge