## Secretary of Revenue v. John's Vending Corporation, Appellant.

Argued November 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Lawrence Mazer*, with him *David S. Rasner*, and *Bogutz & Mazer*, for appellant.

*Edward T. Baker*, Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, September 19, 1973:

This is an appeal challenging the revocation of the Wholesale Cigarette Dealer's License of appellant John's Vending Corporation, based upon evidence that a shareholder and former president of that corporation had previously been convicted of certain crimes, and that such convictions were not listed on appellant's license application. On appeal, the Commonwealth Court affirmed the revocation. *John's Vending Corp. v. Cigarette Tax Board,* 3 Pa. Commonwealth Ct. 658, 284 A. 2d 834 (1971). We granted allocatur to review that decision, and we now reverse.

The facts are not in dispute. On June 3, 1971, the Bureau of Cigarette and Beverage Taxes filed a complaint with the Cigarette Tax Board alleging that appellant had violated Sections 402(2) and (3) of the Cigarette Tax Act.[1] The Board issued a citation to the appellant charging that: "1. An officer of your corporation had been convicted of a crime involving moral turpitude in violation of Section 403(2) of the Pennsylvania Cigarette Tax Act, and 2. You failed to disclose material information regarding the aforementioned conviction in violation of Section 403(3) of the Pennsylvania Cigarette Tax Act." On June 29, 1971, a hearing was held before the Board to show cause why appellant's license should not be suspended or revoked. The only representative for appellant at this hearing was Raymond Martorano, a 50% shareholder who had been president of the corporation until June 1, 1971. The evidence at the hearing clearly established that Mr. Martorano had been convicted of selling untaxed liquor in 1951, of possessing and transporting unstamped whiskey in 1952, and of possessing and selling derivatives of opium in 1954 and again in 1955. It was further estab-

---

[1] Act of July 22, 1970, P. L. 513, 72 P.S. §3169.101 et seq. (1973-74 Supp.).

lished that appellant had left blank the space on its 1971 application calling for previous convictions of "the applicant". The Board filed a recommendation that appellant's license be revoked, and on July 14, 1971, the Secretary of Revenue did so.

Initially, the appellees argue that this appeal is moot because the license at issue expired by law on February 28, 1972. See, Cigarette Tax Act, supra, art. IV, §410, 72 P.S. §3169.410. We do not accept the argument of mootness. The appellant has been a wholesale cigarette dealer for twelve years and it's desire to continue in that business is evidenced by this appeal. An applicant who has violated any provision of the Cigarette Tax Act is ineligible to hold a wholesale license. Section 403(5), 72 P.S. §3169.403(5). Thus although the license for the year in question would have terminated at the close of that year and the applicant would have been required in any event to reapply for licensing for the current year under Section 401, failure to allow review in this action could well prejudice appellant in future applications if this alleged violation should in the future be determined to fall within the purview of Section 403(5). In addition, resolution of the issues herein involved will be determinative of Mr. Martorano's right in the future to seek a license as wholesaler. We therefore proceed to the merits of the appeal.

Section 403 of the Cigarette Tax Act provides that in order to qualify for a wholesale license, the applicant must meet the following requirements: "(1) The premises on which said applicant proposes to conduct his business are adequate to protect the revenue; (2) Said applicant is a person of reasonable financial stability and reasonable business experience. The applicant or any officer, director or shareholder controlling more than fifty per cent of the stock, if the applicant is a corporation, shall not have been convicted of any crime involving moral turpitude; (3) Said applicant

shall not have failed to disclose any material information required by the department; (4) Said applicant shall not have made any material false statement in his application; (5) Said applicant shall not have violated any provision of this act; (6) The wholesale dealer's license shall be valid for one specific location only." Section 406 provides for revocation of a license upon a complaint to and a finding by the Board that the licensee: "has not in good faith complied with this act and with the conditions and/or requirements under Sections 401 to 404 inclusive in this act. . . ." As noted, appellant was charged with violating both Sections 403(2) and 403(3). The Commonwealth Court held that there was insufficient evidence to sustain the allegation of a material false statement in the application; in view of appellee's acceptance of this finding we need not consider that issue in this appeal. We are concerned only with the allegation that an officer of appellant corporation had been convicted of a crime of moral turpitude.

It is conceded that prior to June of 1971 Raymond Martorano had been president of appellant corporation for twelve years, and that he had been convicted of the crimes noted above in the early 1950's. Appellant contends, however, that the legislature did not intend to bring his convictions within the purview of this statute. We agree.

At the outset, it should be noted that every citizen has an inalienable right to engage in lawful employment. While a state may regulate a business which affects the public health, safety and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected. See, *Dent v. West Virginia*, 129 U.S. 114 (1889) ; *Moore v. Jamieson*, 451 Pa. 299, 306 A. 2d 283 (1973).

The present Cigarette Tax Act was passed in 1970, and like its predecessors,[2] it was designed to raise revenue by means of an excise tax on cigarettes. In order to effectuate that tax the legislature has authorized the Department of Revenue to license stamping agents and cigarette dealers. Section 403 sets forth the requisites to obtaining a wholesale cigarette dealer's license. By imposing such restrictions, the legislature sought to ensure that unstamped cigarettes would not be illegally sold, thereby undermining the revenue to be produced by this tax.

For the first time, the 1970 act precluded applicants whose officers had been convicted of moral turpitude.[3] We agree that the state is acting within its duly constituted authority in raising revenue from this source. It further can be accepted that it is reasonable to consider the character of persons being licensed to perform these duties, specifically with regard to integrity and honesty. The facts before us here force us to conclude however that there is no material relevance between the past derelictions of this applicant and his present ability to perform duties required by the position.

First, the fact that these crimes occurred almost twenty years ago renders them of little value in predicting future conduct of their perpetrator. Cf. *McIntosh v. Pittsburgh Railways Company*, 432 Pa. 123, 247 A. 2d 467 (1968). A provision in the nature of Section 403(2) at best only suggests that a person who has committed certain acts in the past would be more likely to betray the trust that this license entails than a citi-

---

[2] See, Act of July 8, 1957, P. L. 594, as amended, 72 P.S. §3168.101 et seq.; repealed July 22, 1970; Act of June 14, 1935, P. L. 341, as amended, 72 P.S. §3154-3167; repealed July 8, 1957.

[3] Compare Section 403(2) with Act of July 8, 1957, P. L. 594, §402, as amended, 72 P.S. §3168.402; repealed July 22, 1970; and Act of June 14, 1935, P. L. 341, §3, repealed July 8, 1957.

zen with no such past history. Such reasoning, while not infallible, has a logical basis in experience. But that basis exists only where those events occurred so recently that the particular character trait of the individual involved can reasonably be assumed to have remained unchanged. Where, as here, nearly twenty years has expired since the convictions and the record reveals that the individual has held this position of responsibility for twelve years without any allegation of impropriety, it is ludicrous to contend that these prior acts provide any basis to evaluate his present character.

In order to avoid an absurd and harsh result, a court may look beyond the strict letter of the law to interpret a statute according to its reason and spirit and accomplish the object intended by the legislature. See, *United States v. Bowman*, 358 F. 2d 421 (3d Cir. 1966); *Swartley v. Harris*, 351 Pa. 116, 40 A. 2d 409 (1945); *Pocono Manor Association v. Allen*, 337 Pa. 442, 12 A. 2d 32 (1940). To interpret Section 403(2) as a blanket prohibition barring anyone who has been convicted of a crime of moral turpitude without regard to the remoteness of those convictions or the individual's subsequent performance would be unreasonable. We cannot assume that the legislature intended such an absurd and harsh result. See, *Appeal of Gagliardi*, 401 Pa. 141, 163 A. 2d 418 (1960).

We are also mindful that such a result runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders. This State in recent years has been unalterably committed to rehabilitation of those persons who have been convicted of criminal offenses. To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds

yet another stumbling block along the difficult road of rehabilitation.

At the time Mr. Martorano undertook the presidency of this corporation, the legislature had not yet seen fit to impose the prohibition at issue here. (See f. n. 3, supra.) Relying on existing law, Mr. Martorano built a new life for himself in the wholesale cigarette business. During the twelve years in which he was so employed, there is no suggestion of any impropriety concerning either his actions or those of the appellant corporation. We do not believe that the legislature could have intended such an unfeeling result and we therefore reject any interpretation of this section that would reach such a conclusion. Under facts such as those presented in this appeal, where the prior convictions do not in any way reflect upon the appellant's present ability to properly discharge the responsibilities required by the position, we hold that the convictions cannot provide a basis for the revocation of a wholesaler's license.

The order of the Commonwealth Court is reversed and the order of the Secretary of Revenue is vacated.

Mr. Chief Justice JONES, Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.