## Residency Requirements for Out-of-State Jobs

ROBERT P. KANE, Attorney General, VINCENT X. YAKOWICZ, Solicitor General, and DAVID M. BARASCH, Deputy Attorney General, March 17, 1976—The Secretary of the Department of Labor and Industry has requested our opinion regarding the proper interpretation and application of section 501 of the Civil Service Act of August 5, 1941, P.L. 752, as amended, 71 P.S. §741.501. Specifically, the question that has been raised is whether the statutory requirement that all persons applying for positions or promotions in the classified service be residents of the Commonwealth applies in those limited circumstances where fulfillment of the duties of the particular job require the employe to be permanently located in an office outside of Pennsylvania.

It is our opinion, and you are hereby advised, that the residency requirements, for both initial appointment and promotion, of the Act of August 5, 1941, P.L. 752, as amended, 71 P.S. §741.501, do not apply in those circumstances where the job in question is located beyond the borders of Pennsylvania.

The Bureau of Employment Security of the Department of Labor and Industry wishes to promote an employe in their Philadelphia district from her present position as an Unemployment Claims Examiner to an Employment Security Specialist. Both positions are classified Civil Service positions. In her new job as an Employment Security Specialist she would be part of Pennsylvania's pilot interstate unemployment compensation benefits program, and thus would be permanently reassigned to work in a New Jersey Department of Labor office in Burlington, N. J.

The purpose of this pilot program is to speed up

the payment of benefits to applicants having claims against the Commonwealth of Pennsylvania while residing in New Jersey. Consequently, an essential element of this pilot program is the out-stationing of Bureau of Employment Security personnel in Department of Labor offices in several New Jersey communities that have high interstate claims loads to supervise and expedite the processing of these claims. The first of these placements is being made in Burlington, N. J. In the near future, BES intends to allocate permanent personnel to two other New Jersey offices, in Woodbury and Camden, N. J., as part of this pilot program.

The employe involved in the present fact situation was a Pennsylvania resident when she was initially appointed to the BES on February 18, 1952. During the following 23 years, she was employed in several Philadelphia local offices of the BES. At the time of her application for promotion from an Unemployment Claims Examiner to an Employment Security Specialist, she was a resident of Willingboro, N. J. Upon inquiry,[1] BES discovered that she was the only qualified worker interested in a transfer and promotion to the New Jersey office in question.

The relevant portion of article V, section 501, of the Pennsylvania Civil Service Act of August 5,

---

1. According to the BES, a canvass of all qualified staff in the 21 Philadelphia local district offices was conducted. The Bureau of Employment Security interviewed 297 Unemployment Claims Interviewers and Unemployment Claims Examiner I's who met the criteria for the position. None of these persons were interested in the position in its present location. They also indicated that they would not be interested in positions in the New Jersey area in the future.

1941, P.L. 752, as amended, 71 P.S. §741.501, states as follows:

"Persons applying for positions or promotions in the classified service shall be citizens of the United States[2] and residents of the Commonwealth. . . ."

This section goes on to provide that, after evidence has been presented by an appointing authority that there is a lack of sufficient qualified personnel available for appointment to any particular class or classes of positions, the director may waive the residence requirement for such class or classes. In this case, however, evidence has not been produced that would indicate a lack of qualified candidates, and, consequently, residency is required for this class.

A literal reading of section 501 of the Civil Service Act would indicate that every person applying for a position or a promotion in the classified service must be a resident of Pennsylvania at the time of application. However, an interpretation that would bar nonresidents from applying for the job in question even though it is outside of Pennsylvania would do violence to the intent of the legislature.

The statutory preference for Pennsylvania residents was apparently incorporated `into the original Civil Service Act of August 5, 1941, P.L. 752,

_____

2. You are further advised that the citizenship requirement of the Civil Service Act is unconstitutional and unenforceable in light of the United States Supreme Court's decision in Sugarman v. Dougall, 413 U.S. 634, 93 S. Ct. 2842 (1973). Earlier opinions of the Attorney General regarding citizenship requirements are consistent with this conclusion: Opinions of the Attorney General of 1973, Opinion No. 4; Opinions of the Attorney General of 1972, Opinions Nos. 92, 113, 114, 116.

art. V, sec. 501, to promote the economic and social welfare of the Commonwealth's residents whenever feasible. The existence of a residency waiver provision in section 501[3] for particular classes of positions indicates a legislative awareness that all classified positions could not always be filled by Pennsylvania residents.

During the intervening years, the growing complexity of State and Federal programs has created certain needs for administrative cooperation among the several States. The Bureau of Employment Security's pilot program for interstate unemployment compensation benefits is the Department of Labor and Industry's response to such a need. Other Pennsylvania agencies may well enter into or expand their interstate contacts in the near future, as adjoining State governments come to realize the efficiency and rationality of interstate cooperation and action.

The legislature in initially adopting, and subsequently amending the Civil Service Act, apparently did not consider the possibility that it might become advantageous to locate a small number of Pennsylvania civil servants outside this State in order to streamline the administration of interstate matters. To read section 501 of the Civil Service Act to require that employes commute potentially long distances to out-of-State work locations in order to retain resident status, would be both an

---

3. ". . . whenever an appointing authority finds a lack of a sufficient number of qualified personnel available for appointment to any particular class or classes of positions, he may present evidence thereof to the director who may waive the residency . . . requirements for such class or classes of positions.": 71 P.S. §741.501.

uneconomical and unreasonable interpretation of the Civil Service Act.

If public servants are required to be Pennsylvania residents in order to qualify for out-of-State jobs, and the Commonwealth of Pennsylvania continues to have the difficulty finding qualified persons evidenced herein, the Commonwealth will have to retain the necessary personnel on an "on loan" basis. Such an arrangement will be costly, since the State would have to pay for travel, lodging and subsistence, in addition to the worker's regular salary.

The courts have long held that a statute need not be read literally if doing so would lead to a result not considered or intended by the legislature. In Church of the Holy Trinity v. United States, 143 U.S. 457, 459, 12 S. Ct. 511, 512 (1892), the court said:

"It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." In so holding, the court refused to apply a statute, which made it illegal to prepay the transportation of an alien under contract to perform labor or services of any kind in the United States, to the payment of passage for an English minister by a church that had contracted for his services. The statute was clearly not directed at such a situation, although a literal application would have prohibited the church's action. This case has been cited often, as recently as Quinn v. Butz, 510 F. 2d 743 (D.C., 1975), as authority for the proper construction of statutes.

Pennsylvania has applied similar rules of construction in Secretary of Revenue v. John's Vending Corp., 453 Pa. 488, 494, 309 A. 2d 358, 362 (1973):

"In order to avoid an absurd and harsh result, a court may look beyond the strict letter of the law to interpret a statute according to its reason and spirit and accomplish the object intended by the legislature."

In affirming a District Court interpretation of a Pennsylvania statute, the third circuit has said:

"[I]t has long been a fundamental canon of statutory construction that the intention of the lawmakers is paramount in determining the meaning of an act. A situation not within the intention of the enacting body, though it is within the letter of the statute, is not within the statute.": United States v. Bowman, 358 F. 2d 421, 423 (3rd Cir., 1966).

There is authority for following the letter of the law closely. The Statutory Construction Act of 1972 provides that:

"[b] When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.": Act of November 25, 1970, P.L. 707, 1 Pa. C.S. §1921. Nevertheless, the same act establishes the presumption "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.": 1 Pa. C.S. §1922.

To conclude that section 501 of the Civil Service Act would bar nonresidents from applying for positions or promotions where the permanent job location is outside of Pennsylvania would be an unreasonable and absurd result. We can well expect that in the future, the increasingly complex nature of interstate governmental administration will create the need for more out-of-State placement of Pennsylvania civil servants; to require these workers to commute potentially long distances in order to qualify for employment would be a narrow

and unfortunate interpretation of the intent of the General Assembly.

While in a particular fact situation it may be possible and even convenient for a worker to reside in Pennsylvania and commute to an out-of-State job, it is our opinion that the Civil Service Act does not require Pennsylvania residence as a prerequisite for application for either a position or a promotion in those limited instances where the permanent job location is anywhere beyond the borders of Pennsylvania.