IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Knelly,                          :
                    Petitioner          :
                                        :   No.  1088 C.D. 2022
            v.                          :
                                        :   Submitted: May 5, 2023
Pennsylvania Department of Health,      :
                    Respondent          :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                         FILED: December 13, 2023

            Eugene Knelly (Knelly) petitions for review of the September 9, 2022
Final Agency Determination and Order (Final Determination) of the Department of
Health, Bureau of Emergency Medical Services (Department), which affirmed the
decision of a hearing officer to revoke Knelly's Emergency Medical Technician
(EMT) certification.  The Department revoked Knelly's certification based on his
(1) *nolo contendere* plea to second-degree felony strangulation, and (2) failure to
timely report the conviction to the Department.  Knelly contends on appeal that the
Department abused its discretion by imposing the most severe sanction available,
the revocation of his certification, which was manifestly unreasonable due to the
nature of his *nolo contendere* plea and the mitigating evidence.  After careful review,
we agree.  We accordingly vacate the Department's Final Determination and remand
for further consideration consistent with this opinion.

## I.      FACTS AND PROCEDURAL HISTORY

            The material facts are not disputed.   In the Commonwealth of
Pennsylvania, EMTs and paramedics are governed by the Emergency Medical

Services System Act (EMS Act).[1] Knelly is an EMT who held an EMT certification with an expiration date of September 30, 2022. (Final Determination at 1; Reproduced Record (R.R.) at 090a.) Knelly was involved in a domestic incident with his minor son and, based on the police's interview with the son, was charged on October 15, 2019, with felony strangulation,[2] misdemeanor simple assault,[3] and misdemeanor reckless endangerment.[4] (Final Determination at 2 & n.1; R.R. at 091a.) Upon recommendation of his attorney, and as part of a plea agreement with the Commonwealth, on October 19, 2020, Knelly entered a plea of *nolo contendere*[5] to second-degree felony strangulation.[6] (Final Determination at 2; R.R. at 091a.)

---

[1] 35 Pa. C.S. §§ 8101-8158.

[2] 18 Pa. C.S. § 2718(a)(1).

[3] 18 Pa. C.S. § 2701(a)(1).

[4] 18 Pa. C.S. § 2705.

[5] The Pennsylvania Superior Court has described the nature and effect of a *nolo contendere* plea as follows:

> [A]lthough a *nolo contendere* plea has the same effect as a guilty plea for purposes of sentencing and is considered a conviction, it is not an admission of guilt. Unlike a guilty plea, a *nolo contendere* plea does not involve an acknowledgment as to having committed an illegal act. Rather, the *nolo contendere* plea admits that the allegations, if proven, meet the elements of the offense or offenses charged. . . . In addition, the difference between a plea of *nolo contendere* and a plea of guilty is that, while the latter is a confession binding defendant in other proceedings, the former has no effect beyond the particular case.

*Commonwealth v. Moser*, 999 A.2d 602, 606 (Pa. Super. 2010) (internal citations and quotations omitted).

[6] Section 2718(a) of the Crimes Code defines the crime of strangulation as follows:

2

Knelly was sentenced to 36 months' probation, with the first 12 months to be served on house arrest with electronic monitoring. (Certified Record (C.R.) at 178.) The sentencing order further provided that Knelly could have contact with his son and must maintain full-time employment. *Id.*

On April 7, 2021, the Department issued to Knelly a four-count Order to Show Cause (OSC). (R.R. at 057a-61a.) Pertinent to this appeal,[7] Count I of the OSC alleged that, pursuant to Section 8121(a)(14) of the EMS Act,[8] Knelly's EMT certification should be revoked because of his *nolo contendere* plea to felony strangulation. (R.R. at 059a.) In Count IV, the Department alleged that Knelly's certification should be revoked pursuant to Section 8121(a)(12) of the EMS Act, 35

---

> **(a) Offense defined.--**A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:
>
> > (1) applying pressure to the throat or neck; or
> >
> > (2) blocking the nose and mouth of the person.

18 Pa. C.S. § 2718(a). Although strangulation typically is graded as a second-degree misdemeanor, *see id.* § 2718(d)(1), it is graded as a second-degree felony where, as pertinent here, it is committed against a "family or household member." *Id.* § 2718(d)(2)(i).

[7] Although the OSC originally included four counts, the Department later withdrew Counts II and III, which sought revocation of Knelly's certification based on the Department's erroneous allegations that Knelly had also pleaded *nolo contendere* to simple assault and reckless endangerment. (R.R. at 059a-60a, 064a-65a; C.R. at 056.) Those charges were withdrawn as part of Knelly's plea agreement. (Hearing Officer Michael T. Foerster Proposed Report at 2 nn.1, 4; R.R. at 070a.)

[8] Section 8121(a)(14) authorizes discipline of an emergency medical services (EMS) provider for a "[c]onviction of a felony, a crime related to the practice of the EMS provider[,] or a crime involving moral turpitude," and defines "conviction" to include "a judgment of guilt, a plea of guilty[,] or a plea of *nolo contendere*." 35 Pa. C.S. § 8121(a)(14) (italics supplied).

3

Pa. C.S. § 8121(a)(12),[9] because Knelly failed to report his conviction to the Department within 30 days as required by Section 8113(i)(4) of the EMS Act, 35 Pa. C.S. § 8113(i)(4). (R.R. at 060a-61a.)

Hearing Officer Michael T. Foerster (Hearing Officer) conducted an online hearing on November 2, 2021.[10] At the hearing, the Department presented three witnesses: (1) Jenni Hoffman, an EMS Program Specialist for the Department, (2) Dr. Aaron Rhone, Emergency Medical Program Manager, and (3) Dylan Ferguson, Director of the Bureau of EMS. The Department also introduced into evidence the docket from Knelly's criminal case, the police criminal complaint with the affidavit of probable cause,[11] Knelly's *nolo contendere* plea and sentence, and several screenshots of Knelly's online EMS account with the Department.[12] Knelly testified on his own behalf and presented the testimony of Kenneth Soult, the ambulance chief in Mahanoy City and Knelly's supervisor.

---

[9] Section 8121(a)(12) authorizes discipline of an EMS provider for the "[f]ailure to comply with reporting requirements imposed under this chapter or as established by the [D]epartment." 35 Pa. C.S. § 8121(a)(12).

[10] Section 8157 of the EMS Act, 35 Pa. C.S. § 8157, requires the Department to hold hearings and issue adjudications in accordance with the Administrative Agency Law, 2 Pa. C.S. §§ 501-508, 701-704. It further authorizes appeals of Department adjudications to this Court. *Id.*

[11] Affidavits of probable cause are filed with charging criminal complaints to support the issuance of an arrest warrant. *See* Pa.R.Crim.P. 513(B)(2).

[12] The Department's exhibits were admitted under seal and, accordingly, were not included in Knelly's Reproduced Record. They were received by this Court from the Department on November 17, 2022, as part of the certified agency record. (C.R. at 155-96.)

Ms. Hoffman testified that she was advised by Eastern PA EMS Council[13] that Knelly had a criminal record. (C.R. at 062.) She thereafter conducted an audit, which included obtaining a background check and criminal history report. (C.R. at 063.) During her audit, Ms. Hoffman discovered Knelly's conviction of felony strangulation resulting from his *nolo contendere* plea on October 19, 2020. (C.R. at 064-65, 067.) Ms. Hoffman reiterated the allegations from the affidavit of probable cause supporting the criminal complaint filed against Knelly, which detailed the alleged incident between Knelly and his son. (C.R. at 067-68.) Ms. Hoffman also testified that the Department had no record of Knelly reporting his conviction to the Department within 30 days. (C.R. at 069.) After discussing Knelly's conviction internally, Ms. Hoffman testified that the Department "felt his certification should be revoked because of the felony conviction, the circumstances surrounding the conviction, and his failure to report the conviction as required." (C.R. at 070.)[14] Ms. Hoffman acknowledged that, in conducting her audit, she did not speak with anyone involved with Knelly's case, including the investigating police officer, Knelly himself, Knelly's son, Knelly's son's mother, or any treating physicians, and accordingly had no firsthand knowledge of the circumstances underlying the charge. (C.R. at 071-72.) Ms. Hoffman did not believe that an in-

---

[13] Eastern PA EMS Council is one of several regional EMS councils that contract with the Department to assist with investigations and advise the Department of issues with EMS providers within their region. (C.R. at 062.)

[14] More specifically, Ms. Hoffman testified that a felony strangulation conviction would be problematic for an EMS provider because, "as an EMS provider, [ ] Knelly should have been more engaged and aware of his child's medical compliance, not punishing him out of frustration by assaulting him when he simply forgot if he had taken medication that day. . . . If [ ] Knelly is capable of strangling his own child, how can we trust him with the safety of strangers when he becomes angry?" (C.R. at 070-71.)

person investigation was necessary because she had read the facts alleged in the affidavit of probable cause.  (C.R. at 072.)

Regarding reporting requirements, Ms. Hoffman testified that the Department's EMS website permits EMS providers to self-report convictions by updating their criminal history on the website.  (C.R. at 073-74.)  When they do so, a criminal history tab appears in their account, which cannot be deleted.  (C.R. at 074, 079-80.)  Because that tab did not appear in Knelly's online account, the Department concluded that he did not report his conviction.  *Id.*  Ms. Hoffman also testified that the Department received no records from Knelly regarding his conviction.  (C.R. at 069.)

The Department next called Dr. Rhone, who further explained the Department's decision to seek revocation of Knelly's license:

> The guilty plea of no contest to strangulation raises grave concern for the [Department], again, even greater when it was the provider's child.  This is a concern.  As we looked through the affidavit of probable cause which he pled guilty to the contents of, there was excessive force used. . . . In this case, he took extreme actions against his own child for reporting that he took the medication when he simply forgot.

(C.R. at 082-83.)  Dr. Rhone, like Ms. Hoffman, acknowledged that he had no firsthand knowledge of any facts underlying the strangulation charge and that he did not need to speak directly with anyone involved.  Rather, he reviewed the affidavit of probable cause and considered it the "officer's sworn testimony."  (C.R. at 084.)

Mr. Ferguson, who was ultimately responsible for the recommendation to revoke Knelly's certification, considered the same documents reviewed by Ms. Hoffman and Dr. Rhone.  (C.R. at 088.)  Mr. Ferguson testified, in pertinent part, as follows regarding the Department's decision:

6

[T]here were several factors that were concerning. One of those factors included the fact that the victim was a minor, and that minor was in [Knelly's] charge, meaning that [he] had direct control and a responsibility for [his] wellbeing, just as [ ] EMS provider[s] would have a patient within their charge in their professional capacity.

Additionally, because the matter actually involved, as alleged in the charging documents which the plea of [*nolo contendere*] was made to, was that it had to do with medication compliance, certainly an issue that [EMS] providers in the Commonwealth . . . deal with patients, oftentimes having to respond to patients that . . . maybe are non-compliant with their own medication, and ultimately, the severity of the actions, to the point of creating visual impairment and also examining the grading of the charge that was pled to, the fact that it was a felony in the second degree.

. . . .

So when I evaluated the circumstances and I evaluated the statutory provisions, duties and responsibilities of the Department . . . , I ultimately felt that I had no other good faith choice other than to sustain the recommendation of my regulatory and compliance panel and ultimately issue the order to show cause to revoke the certification.

(C.R. at 088-89.) Regarding his understanding of Knelly's *nolo contendere* plea, Mr. Ferguson testified that he understood that such a plea means that Knelly does not "contest the fact that there is ample evidence that could potentially sustain a conviction during trial." (C.R. at 091.)[15]

---

[15] Mr. Ferguson testified that the Department is required by "statute" to review affidavits of probable cause in its investigations. (C.R. at 095-96.) Section 8105(b)(14) of the EMS Act, 35 Pa. C.S. § 8105(b)(14), authorizes the Department to "investigate, based on complaints and information received, possible violations of this chapter and regulations under this chapter and take disciplinary actions, seek injunctions and refer matters for criminal prosecution."

Knelly first presented the testimony of Mr. Soult, who testified that he is the chief of the Mahanoy City ambulance service and has been Knelly's supervisor since 2007. (C.R. at 101-02.) He further testified that he has never had any performance issues with Knelly and has never received any patient complaints regarding Knelly's care. He also stated that losing Knelly as an EMT would pose significant hardship on Mahanoy City's ambulance service, possibly putting them "out of service" for a period of time. (C.R. at 101-04, 110.) Mr. Soult had no concerns with Knelly continuing as an EMT and stated that he would trust Knelly with his own family. (C.R. at 104.)

Knelly then testified on his own behalf. He testified that he has been employed as an EMT in Mahanoy City for approximately 13 to 14 years and has been an EMT for approximately 26 years. (C.R. at 115-16.) Knelly described the custody dispute that was ongoing at the time of the incident that gave rise to his strangulation charge. Knelly stated that his son's mother had been coaching his son, then 11 years old, to make allegations of abuse against Knelly, which the son eventually did. (C.R. at 118.) At the time of the incident, Knelly had primary physical and legal custody of his son, with his son's mother having supervised visitation due to her drug and related criminal issues. (C.R. at 118.) Knelly indicated that he had raised his son exclusively for six years prior to the incident and that he never strangled, spanked, or abused him physically. (C.R. at 120-21.) He nevertheless decided, on the advice of his criminal counsel, to enter the *nolo contendere* plea to protect his son from having to go to court. (C.R. at 121.) Knelly received a sentence of probation which, according to Knelly's understanding, was acceptable to the district attorney because Knelly's son admitted to lying about the incident at the request of his mother. (C.R. at 123-24.)

Regarding his reporting requirements, Knelly testified that he was aware that he had to report his conviction under the EMS Act and that he attempted to do so the day of his plea and sentence. (C.R. at 125-26.) He stated that, despite his attempts to enter the conviction on the Department's website, the website is difficult to navigate and did not give him any confirmation that the information was received by the Department. (C.R. at 126-27.) He further indicated that the Department would be able to check to see if he logged into the system that day. (C.R. at 126.) Knelly indicated that he never intended to not report his conviction and that he told his boss and coworkers that he did report it. (C.R. at 128-29.) Nevertheless, after purportedly attempting to report his conviction, Knelly did not follow up with the Department or submit any records, but instead contacted the Eastern PA EMS Council and spoke with "Deputy Director Smith." (C.R. at 133-34.) Knelly stated that he did not follow up with the Department to provide records of his conviction because he was not familiar with the procedure for doing so, and he assumed that, if the Department wanted any records, they would ask for them. (C.R. at 136.) Knelly also reiterated that he has been an EMT for 26 years and that being an EMT is the only way he knows how to make a living. (C.R. at 129.) He currently sees his son on the weekends pursuant to an informal agreement with his son's mother. (C.R. at 131.)

Following the hearing, closing arguments, and briefing, on January 6, 2022, the Hearing Officer issued a Proposed Report and order revoking Knelly's EMT certification. (R.R. at 069a-84a.) The Hearing Officer found and concluded that Knelly's *nolo contendere* plea qualified as a "conviction" and justified a Department sanction pursuant to Section 8121(a)(14) of the EMS Act, 35 Pa. C.S. § 8121(a)(14). (R.R. at 076a-77a.) The Hearing Officer noted Knelly's extensive

9

testimony that he did not commit the offense underlying his *nolo contendere* plea, but dismissed Knelly's testimony as an attempt to collaterally challenge his conviction. (R.R. at 077a.) The Hearing Officer further concluded, however, that the Department's consideration of, and reliance upon, the police affidavit of probable cause was improper. (R.R. at 078a.) The Hearing Officer noted that the facts alleged in an affidavit of probable cause (1) serve the singular purpose of permitting the issuance of an arrest warrant, (2) do not support a conviction at trial, (3) are not subject to cross-examination, and (4) are hearsay. (R.R. at 079a-80a.) The Hearing Officer also noted that, although there was significant disagreement regarding the functioning of the Department's EMS website, there still was no evidence that Knelly did, in fact, report his conviction as required by Section 8113(i)(4) of the EMS Act, 35 Pa. C.S. § 8113(i)(4). The Hearing Officer therefore concluded that Knelly's failure to report also justified a Department sanction pursuant to Section 8121(a)(12) of the EMS Act, 35 Pa. C.S. § 8121(a)(12).

Regarding the specific sanction to be imposed, the Hearing Officer concluded as follows:

> **As mentioned above, the [Department]'s consideration of underlying evidence was incorrect.** This leaves the question[:] does the simple admission of the elements of felony strangulation give sufficient purchase for the [Department] to order revocation of [Knelly's] EMT certificate? The undersigned respectfully posits that the [Department] would be well within [its] authority to revoke certification simply based on findings of elemental strangulation, [*i.e.*], [without] the allegations in the affidavit of probable cause. Felony strangulation is a gruesome, troubling crime that raises obvious concerns about one certified to render help to the helpless. The elements . . . provide sufficient [support] for revocation.

10

(Hearing Officer Report at 14-15; R.R. at 082a-83a) (emphasis added).  The Hearing Officer accordingly ordered revocation of Knelly's certification.  (R.R. at 084a.)

Knelly filed exceptions on February 7, 2022, arguing that revocation of his certification was excessive.  (R.R. at 085a-89a.)  The Department issued its Final Determination on September 9, 2022, affirming the Hearing Officer's decision.  The Department first addressed the question of whether the affidavit of probable cause is hearsay and, relatedly, whether it should be considered in determining whether, and to what extent, Knelly should be sanctioned.  Relying on the rule enunciated by this Court in *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366 (Pa. Cmwlth. 1976), the Department noted that only unobjected-to hearsay evidence that is corroborated by other evidence in the record may support a finding of fact by an administrative agency.  (Final Determination at 6; R.R. at 095a.)  The Department concluded that Knelly's testimony corroborated the limited facts that the incident involved Knelly's 11-year-old son and that Knelly had primary physical and legal custody of his son at the time.  (Final Determination at 7; R.R. at 096a.)  The Department otherwise **concluded that, under *Walker*, no other facts alleged in the affidavit would be considered.**  *Id.*

The Department **nevertheless agreed that Knelly's EMT certification should be revoked based both on his *nolo contendere* plea and his failure to report his conviction to the Department.**  Although the Department acknowledged, in passing, Knelly's mitigating evidence, it nevertheless concluded as follows:

> By pleading *nolo contendere*, [Knelly] admitted that he knowingly or intentionally impeded the breathing or circulation of the blood of another by applying pressure to the throat or neck or blocking the nose and mouth of the

11

person[,] which in this case was . . . his minor 11-year-old son, [who was] under his full-time care.

. . . .

Taking into consideration the 20-plus years of service without any discipline and the shortage of EMTs available to fill the spot together does not overcome the aggravating factor that Knelly pled to a felony in the second[ ]degree relating to the strangulation of his minor son . . . , and that due to the custody arrangement had direct control and was solely responsible for the wellbeing of his son. Clearly Knelly as an EMT would have the same responsibility with a patient that he is providing service to under his charge. An EMT must be trusted with the safety of strangers in all situations that [are] encountered while providing emergency [medical] services. The Hearing Officer correctly [weighed] the gravity of the charges against the mitigating circumstances. When taken [ ] together these factors are to be given greater weight than the mitigating factors.

(Final Determination, at 9-10; R.R. at 098a-99a.) The Department finally concluded that Knelly's conviction was not remote in time, having occurred approximately six months prior to the Department's filing of the OSC. (Final Determination at 10; R.R. at 099a.) Thus, the Department concluded that "there is material relevance between Knelly's conviction and his present ability to perform his duties as an EMT," and that "it can reasonably be assumed that the character trait which led to his conviction has remained unchanged." (Final Determination at 10-11; R.R. at 099a-100a.)

Regarding Knelly's failure to report his conviction, the Department considered the evidence presented by both Ms. Hoffman and Knelly and concluded that, "more likely than not," Knelly failed to report. *Id.* at 13; R.R. at 102a. The Department determined that, "[h]aving failed *in his attempt* to register on the

12

website, to follow through or to provide the documents of his plea to the Department, Knelly is in violation of the [EMS] Act." *Id.* (emphasis added). The Department accordingly denied Knelly's exceptions to the Hearing Officer's report and affirmed the revocation of his EMT certification. *Id.*

Knelly now petitions for review in this Court.

## II. DISCUSSION

Knelly raises a single issue in this appeal, namely, whether the Department erred or abused its discretion in affirming the revocation of his EMT certification because such sanction is manifestly unreasonable under the circumstances. Knelly argues that revocation is manifestly unreasonable given the nature of his *nolo contendere* plea and the mitigating evidence he presented before the Department. We agree.

### A. SCOPE AND STANDARD OF REVIEW

Absent an accusation of bad faith or fraud, our review of a licensing board's disciplinary sanction is limited to determining "whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Goldberger v. State Board of Accountancy*, 833 A.2d 815, 817 n.1 (Pa. Cmwlth. 2003) (quoting *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 365 (Pa. 1991)). Further, a professional licensing board exercises "considerable discretion in policing its licensees." *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514, 519 (Pa. Cmwlth. 2009). The weight to be given to evidence of mitigating circumstances is a matter of agency discretion. *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). Nevertheless, this Court must "correct abuses of discretion in manner or degree of

13

penalties imposed." *Ake*, 974 A.2d at 519 (internal quotation omitted); *see also*

*Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 578 A.2d

1355 (Pa. Cmwlth. 1990).

## B.     ANALYSIS

### 1.     Applicable Provisions of the EMS Act

Section 8121(a)(12), (14) of the EMS Act, in pertinent part, provides as

follows:

> **(a) Grounds for discipline.--**The department may discipline an EMS provider or applicant for EMS provider certification for any of the following reasons:
> . . . .
>
> (12) Failure to comply with reporting requirements imposed under this chapter or as established by the [D]epartment.[16]
>
> . . . .
>
> (14) Conviction of a felony, a crime related to the practice of the EMS provider or a crime involving

---

[16] Section 8113(i) governs the reporting requirements for applicants for EMS certification and EMS providers.  It provides, in pertinent part, as follows:

> **(i) Reports of convictions, discipline and exclusions.--**
>
> (1) An applicant for an EMS provider certification shall report to the [D]epartment all misdemeanor, felony and other criminal convictions that are not summary or equivalent offenses . . . .
>
> (2) The applicant shall also provide the [D]epartment with a certified copy of the criminal charging, judgment and sentencing documents for each conviction and a certified copy of an adjudication or other document imposing discipline against the applicant.
> . . . .
>
> (4) An EMS provider shall report the same type of convictions, disciplinary sanctions and exclusions and provide the same documents to the [D]epartment within 30 days after each conviction, discipline and exclusion.

35 Pa. C.S. § 8113(i).

14

moral turpitude. For the purposes of this paragraph, a conviction includes a judgment of guilt, a plea of guilty or a plea of nolo contendere.

. . . .

35 Pa. C.S. § 8121(a)(12), (14). Where discipline is authorized under Section 8121(a), the Department *may* take one or more of the following actions:

(1) Deny the application for certification.

(2) Issue a public reprimand.

(3) Revoke, suspend, limit or otherwise restrict the certification.

(4) Require the person to take refresher educational courses.

(5) Impose a civil money penalty not exceeding $1,000 for each incident in which the EMS provider engages in conduct that constitutes a basis for discipline.

(6) Stay enforcement of any suspension, revocation or other discipline and place the individual on probation with the right to vacate the probationary order for noncompliance.

35 Pa. C.S. § 8121(b)(1)-(6).

### 2. <u>Legal Principles Governing Licensure Revocation</u>

The Pennsylvania Supreme Court has long stated:

**[E]very citizen has an inalienable right to engage in lawful employment.** While a state may regulate a business which affects the public health, safety and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected.

*Secretary of Revenue v. John's Vending Corporation*, 309 A.2d 358, 361 (Pa. 1973) (citations omitted) (emphasis added). *See also King v. Bureau of Professional and Occupational Affairs*, *State Board of Barber Examiners*, 195 A.3d 315, 329 (Pa.

15

Cmwlth. 2018) (**"our Supreme Court has consistently interpreted [a]rticle I, [s]ection 1 of the Pennsylvania Constitution[, Pa. Const. art. I, § 1,] as guaranteeing an individual's right to engage in any of the common occupations of life**") (emphasis added).

In *John's Vending*, the Secretary of Revenue revoked a wholesale cigarette dealer's license because its 50-percent shareholder was convicted of (1) selling, possessing, and transporting untaxed and unstamped liquor, and (2) selling and possessing opium derivatives. The Secretary relied on a statute that prohibited the licensing of an entity with a 50-percent shareholder that had been convicted of a crime involving moral turpitude. 309 A.2d at 361. On appeal, the Pennsylvania Supreme Court examined the applicable statute, which prohibited the sale of unstamped cigarettes to protect against the loss of tax revenue. To that end, the statute also required a licensee to demonstrate character, integrity, and honesty. The Supreme Court found that the **"past derelictions" of the 50-percent shareholder did not adversely affect his present ability to do his job lawfully, particularly given that the shareholder had held a position of responsibility for a number of years after his conviction without wrongdoing.** *Id.* The Supreme Court concluded that the nature of the offending conduct and its remoteness in time must be considered where an administrative agency seeks to revoke a professional license on the basis of a criminal conviction. That Court further explained that, "where the prior convictions do not in any[ ]way reflect upon the [licensee's] present ability to properly discharge the responsibilities required by the position, . . . the convictions cannot provide a basis for the revocation of a . . . license." *Id.*

Thus, in considering whether to revoke a license based on a licensee's criminal conviction, *John's Vending* requires that a licensing agency consider the

16

nature of the offending conduct and its remoteness in time together with the relationship of the conviction to the licensee's present ability to perform his or her job responsibilities. *Ake*, 974 A.2d at 520; *Elder v. Bureau of Professional and Occupational Affairs*, *State Board of Medicine*, 206 A.3d 94, 105 (Pa. Cmwlth. 2019) (citation omitted).

In *Ake*, the State Board of Accountancy (Board) relied on Kevin Ake's (Ake) unreported felony hate crime conviction, which occurred seven years prior in Illinois, to revoke his certified public accountant (CPA) license. The Board concluded that the revocation of Ake's license would (1) eliminate any risk of harm to Ake's potential future clients; (2) deter other CPAs from committing felonies outside the state; and (3) assure the public that only individuals of good moral character are permitted to practice as CPAs in Pennsylvania. The Board rejected Ake's plea for leniency, which was based, in part, on his need for CPA credentials to practice his profession and to maintain gainful employment. The Board further was not persuaded by Ake's mitigation evidence. 974 A.2d at 518-19.

Ake appealed, asserting that the Board abused its discretion by imposing the maximum penalty allowed by law. This Court agreed. We noted that, although a licensing board "exercises considerable discretion in policing its licenses," under *John's Vending*, this Court has a duty "*to correct abuses of discretion in manner or degree of penalties imposed.*" *Id.* at 519 (emphasis added). We vacated the Board's decision and remanded for the imposition of a lesser sanction, explaining as follows:

> *John's Vending* teaches that the nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of a conviction. In this case, nearly seven years elapsed between Ake's offending conduct and his

17

application to reactivate his Pennsylvania CPA credentials. . . . [S]even years is a substantial interval of time. Moreover, Ake's conduct was isolated to calls made over a two-week period; he has not engaged in similar conduct since his arrest. . . .

[I]t is apparent that the General Assembly drafted the disciplinary provisions of [Section 1 of] the CPA Law[17] with an eye toward ferreting out the types of misconduct that are anathema to the accounting profession. For example, among the other grounds for discipline are fraud or deceit in obtaining a CPA certificate; dishonesty, fraud or gross negligence in the practice of accounting; conviction of any crime involving dishonesty or fraud; and violation of any federal or state revenue law. . . . Ake's harassing conduct in Illinois was certainly deplorable. However, it does not relate to any of the character qualities the legislature has identified as central to holding a CPA certificate, *i.e.*, honesty, integrity and being able to practice accounting in a non-negligent manner.

*Ake*, 974 A.2d at 520. *See also Elder*, 206 A.3d at 105-06 (State Board of Medicine erred and abused its discretion in relying on 14-year-old crimes and misconstruing applicant's mitigating evidence to conclude that applicant for license to practice medicine and surgery did not have necessary moral character for license; board did not "take into account its own findings that Elder's conduct since 2004 has been not only free of criminal conduct but dedicated to significant volunteer and public service activities").

### 3. Knelly's *Nolo Contendere* Plea

With regard to his strangulation conviction, Knelly argues that the Department imposed the most severe sanction without adequate consideration of mitigating evidence and the fact that his conviction was based on a *nolo contendere*

---

[17] Act of May 26, 1947, P.L. 318, *as amended*, added by Section 7 of the Act of September 2, 1961, P.L. 1165, 63 P.S. § 9.9a.

plea, which itself does not sufficiently connect the conviction to his present ability to perform his duties as an EMT. We agree for at least three reasons.

First, there appears to have been throughout the proceedings in the Department an erroneous understanding of the nature and effect of a *nolo contendere* plea and, as the Department now appears to recognize, an inordinate reliance on the facts alleged in the affidavit of probable cause. *Nolo contendere* pleas admit neither to facts alleged in the affidavit or to the elements of the crime charged. Rather, as noted above, defendants entering *nolo contendere* pleas admit that the facts as alleged, if proven, could support a conviction. Although a *nolo contendere* plea clearly qualifies as a "conviction" under Section 8121(a)(14) of the EMS Act, the plea itself *does not* establish the alleged facts so heavily relied upon by Department officials in initially recommending revocation. Further, although the Hearing Officer ultimately ruled that the information in the affidavit of probable cause should not have been considered by the Department,[18] it is clear from Ms. Hoffman's, Dr. Rhone's, and Mr. Ferguson's testimony that they relied heavily on those facts to justify the filing of an OSC seeking revocation. *See, e.g.*, C.R. at 070-71; 082-83.

Second, in its Final Determination, the Department affirmed the revocation of Knelly's certification based exclusively on the definition of the crime of strangulation itself and the fact that the victim was Knelly's 11-year-old son, of whom Knelly had primary physical and legal custody at the time. Although the conviction was not remote in time, the Department did not, as required by *John's Vending* and its progeny in this Court, establish a reasonable tie between Knelly's plea and his ability to continue to competently perform his duties as an EMT. The

---

[18] This evidentiary ruling is not at issue in this appeal. We therefore, like the Department, consider only whether the fact of Knelly's *nolo contendere* plea to strangulation justifies revocation of his EMT certification.

19

Department's identification of purported risks with Knelly's "character trait" is entirely speculative and does not at all acknowledge that Knelly's work environment with vulnerable strangers is markedly different than a bitter custody dispute where manufactured accusations are often the norm. And, more importantly, there is no evidence that those purported risks have materialized even once on the job in the past 26 years of Knelly's career.

Third, the Department completely ignored several mitigating factors that are undisputed in the record. The Department disregarded and mischaracterized, as a "collateral attack" on his conviction, Knelly's explanation that he and his son's mother were engaged in a bitter custody battle and that the allegations that gave rise to the criminal charges were untrue and fabricated by his son at his mother's prompting. Knelly at no point challenged his conviction before the Department. Rather, he argued before the Department, and argues again here, that he pleaded no contest because he believed such a plea was in his and, more importantly, his son's best interest. He explained his understanding that he received a lenient sentence chiefly because the district attorney was aware that the allegations had been fabricated. Most tellingly, Knelly also confirmed that he currently has at least partial custody of his son pursuant to an informal agreement with his son's mother. There is no meaningful discussion or weighing of these facts anywhere in the Department's Final Determination, which absence we find to be manifestly unreasonable.

We therefore conclude that the Department's revocation of Knelly's EMT certification based on his *nolo contendere* plea was a manifest abuse of discretion and unreasonable in these circumstances.

### 4. Knelly's Failure to Report

With regard to Knelly's failure to report his conviction as required by Section 8113(i) of the EMS Act, the Department weighed both Ms. Hoffman's and Knelly's testimony regarding the facility of using the Department's website and whether there was any indication in Knelly's online account that he had, or had attempted to, report his conviction. The Department concluded that Knelly "*failed in his attempt to register* on the website" and failed to "follow through or to provide the documents of his plea to the Department." (Final Determination at 13; R.R. at 102a) (emphasis added). Although we will not re-weigh the testimony or make new or different credibility determinations, we nevertheless note that, at most, Knelly simply failed in his attempts to register his conviction and did not follow up with the Department to provide documentation of it. There is no evidence that he attempted to hide his conviction or subvert the Department's reporting requirements. Knelly testified openly that he knew about the reporting requirement (with the mistaken belief that he had only 72 hours to report), *see* R.R. at 041a-42a, and intended to report immediately. The Department heard and presented no evidence to the contrary, and its conclusion that Knelly failed to report is based exclusively on a missing tab in Knelly's online account. Moreover, the Department's Final Determination expressly suggests that it credited Knelly's testimony at least to the extent that he stated he *attempted* to report. Under those circumstances, we conclude that Knelly's violation of Section 8113(i) cannot itself justify the complete deprivation of Knelly's ability to pursue this lawful occupation. The Department committed a manifestly unreasonable exercise of its judgment in concluding to the contrary.

21

### III.  CONCLUSION

We acknowledge that our review here is limited to determining whether the Department's decision was made in accordance with the law and not whether it was reasonable.  *Slawek*, 586 A.2d at 365.  We further acknowledge that, although we are duty-bound to correct abuses of discretion, "we will not, absent a manifestly unreasonable exercise of judgment, substitute our discretion for that of [the Department], an administrative body endowed with expertise in matters subject to its jurisdiction." *Burnworth*, 589 A.2d at 296.  Nevertheless, we are constrained here to conclude that the Department manifestly abused its discretion by imposing the most extreme sanction of revocation, which should be reserved for the worst offenders.  *Ake*, 974 A.2d at 522.

In doing so, we in no wise downplay the seriousness of the crime to which Knelly pleaded *nolo contendere*, the *criminal* sanction for which already has been imposed by the court of common pleas.[19]  Rather, because the Department is

---

[19] Nor do we, as the Dissent suggests, reweigh the evidence, make our own credibility determinations, or fail to afford the Department the deference commensurate with our standard of review.  The Dissent notes, without citation to the record, that the Department rejected Knelly's testimony that he did not commit the acts underlying his plea and only entered the plea to protect his son from a trial.  However, and to be precise, the Department specifically avoided relying on any facts underlying Knelly's plea and did not base its determination on any specific rejection of Knelly's testimony in that regard.  Rather, the Department based its determination strictly on the fact of Knelly's *nolo contendere* plea, the involvement of Knelly's son, and Knelly's failed attempts to report the conviction.  Our disposition is not based in any sense on our own finding that Knelly did not commit the acts underlying his criminal charges.  We have assumed throughout our analysis that (1) Knelly pleaded *nolo contendere* to those charges, that the charges involve his minor son, and that such a plea supports a sanction under the EMS Act; and (2) although Knelly testified that he unsuccessfully attempted to report his conviction through the Department's online system, the Department nevertheless had no record of the conviction as required by the EMS Act.  Our disposition is that such facts do not support the *most severe* sanction of revocation in these circumstances because the Department ignored mitigating evidence and committed legal error in determining the *degree* of Knelly's sanction.

22

charged with both (1) imposing sanctions that further its legitimate interest in ensuring that EMTs provide safe, competent, and efficient care to Pennsylvania's public, and (2) considering all mitigating circumstances presented, including the nature of Knelly's *nolo contendere* plea, a lesser and proportionate *professional* sanction is warranted here. We accordingly vacate the Department's Final Determination and remand for further consideration consistent with this opinion.[20]

_____

PATRICIA A. McCULLOUGH, Judge

---

The Department, of course, is free to weigh the evidence and make credibility determinations, but it may not arbitrarily ignore and fail to consider mitigating evidence. Here, the Department did not consider that Knelly (1) received a very lenient probationary sentence; (2) currently has at least partial custody of his son; (3) is required as part of his sentence to maintain gainful employment; (4) had no incidents involving violence or aggression to patients prior to or since this conviction; and (5) testified at length regarding how he unsuccessfully attempted to report his conviction (which testimony the Department appears to have accepted). As we have shown, our case law mandates that the Department meaningfully consider mitigating evidence and make a clear and reasonable connection between the licensee's offending conduct and the professional sanction imposed, which here must serve to further the Commonwealth's interest in licensing effective and safe EMTs. The Department made no such connection here and, in our judgment, ignored and disregarded substantial mitigating evidence to protect against what are, at best, very speculative concerns. In short, the Department, which has the burden of proof, did not make its case to justify this particular, and very severe, sanction. It is on that basis, and that basis alone, that we vacate and remand to the Board for further consideration.

[20] Although a single judge of this Court denied Knelly's Application For Stay on the ground that Knelly did not, at that state of the proceedings, make a strong enough showing of his likelihood of success on the merits, that judge also acknowledged that a panel of this Court might, and here does, conclude to the contrary. *See Knelly v. Pennsylvania Department of Health* (Pa. Cmwlth., No. 1088 C.D. 2022, filed December 1, 2022) (McCullough, J.) (single-judge op.), slip op. at 6.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Knelly, : 
          Petitioner : 
           :   No.  1088 C.D. 2022
        v. : 
           : 
Pennsylvania Department of Health, : 
          Respondent : 

## **O R D E R**

AND NOW, this 13th day of December, 2023, the September 9, 2022 Final Agency Determination and Order of the Department of Health, Bureau of Emergency Medical Services (Department) is hereby VACATED, and this matter is REMANDED to the Department for further consideration consistent with the foregoing opinion.

Jurisdiction relinquished.

 

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Knelly,                              :
              Petitioner          :
                                :
     v.                                    :   No. 1088 C.D. 2022
                                :
Pennsylvania Department of Health,   :
              Respondent          :   Submitted: May 5, 2023

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

DISSENTING OPINION
BY JUDGE CEISLER                     FILED: December 13, 2023

I respectfully dissent. I believe that in vacating the Final Agency Determination and Order (Final Determination) of the Department of Health, Bureau of Emergency Medical Services (Department) and remanding for further consideration, the Majority has improperly reweighed the evidence and made its own credibility determinations, which this Court is not permitted to do.

Notably, the hearing officer specifically rejected Eugene Knelly's testimony that the accusations against him were false, as well as his reasons for entering a plea of *nolo contendere* to second-degree felony strangulation. It seems just as likely that the District Attorney in the criminal case accepted a *nolo contendere* plea because Knelly committed the offense charged, but a conviction might be difficult to obtain. Section 8121(a)(14) of the Emergency Medical Services System Act (EMS Act), 35 Pa. C.S. § 8121(a)(14), specifically defines a felony "conviction" as including *nolo contendere* pleas. Therefore, the EMS Act required that Knelly report his conviction to the Department, not that he merely *attempt* to report it.

Since we will never know if Knelly actually committed the underlying felony charge to which he pled, I believe it is prudent to err on the side of caution due to the severity of the allegations. We must also give deference to the hearing officer, who actually observed the witnesses' testimony and made credibility determinations based on those observations. It would not be in the public's best interest to allow an emergency medical technician (EMT) to remain certified and continue to dispense lifesaving care in extremely stressful situations after he has been convicted of physically harming his own minor child.

In this situation, I am uncomfortable reweighing the evidence and substituting our credibility determinations for those of the hearing officer. Because I do not believe the Department abused its discretion in revoking Knelly's EMT certification under the circumstances, I would affirm the Department's Final Determination.

_____

ELLEN CEISLER, Judge